# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

CHRISTINA B.,[1]

Plaintiff,

v.

5:19-CV-1192
(ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
JESSICA TUCKER, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 3,7).

## I.   PROCEDURAL HISTORY

Plaintiff's father filed an application for Supplemental Security Income ("SSI") on plaintiff's behalf on June 1, 2013, alleging disability beginning February 6, 2003. (Administrative Transcript ("T.") 113, 292). The application was initially denied on January 21, 2014. (T. 121). Plaintiff made a timely request for a hearing, which was

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

held on May 24, 2016[2] before Administrative Law Judge ("ALJ") Jennifer Gale Smith. (T. 25-44). On February 10, 2016, ALJ Smith issued an unfavorable decision.[3] (T. 10-28). Plaintiff subsequently filed an action in the Northern District of New York challenging the Commissioner's decision. Soon after, a stipulation for remand was reached and the ALJ's decision was reversed and remanded back to the Commissioner. (T. 1390-91). The Appeals Council vacated the decision and remanded for further evaluation of plaintiff's education records and further development of the record, if necessary. (T. 1398).

A new hearing commenced before ALJ Smith on May 23, 2019. (T. 1310-51). Plaintiff appeared with counsel, and the ALJ heard testimony from Vocational Expert ("VE") Esperanza DiStefano. (*Id.*). On July 23, 2019, ALJ Smith issued an unfavorable decision, which became the final decision of the Commissioner. (T. 1268-95).

## II.   GENERALLY APPLICABLE LAW

### A. Disability Standard

#### 1.   Childhood

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to

---

[2]Plaintiff and her father initially appeared for a hearing on February 9, 2016, however the ALJ adjourned this appearance in order for plaintiff to obtain counsel. (T. 100-11).

[3]Plaintiff turned 18 years old while the disability determination was pending, thus the ALJ's decision assessed plaintiff's qualifications for disability benefits under both the childhood and adult standards.

result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).  *See Hudson v. Astrue*, 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *3-4 (N.D.N.Y. Apr. 30, 2009) (discussing the standard for children's disability benefits).  However, the definition provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity. . . ."  42 U.S.C. § 1382c(a)(3) (C)(ii).

The agency has developed a three-step process to be employed in determining whether a child can meet the statutory definition of disability.  20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).  The first step of the test requires a determination of whether the child has engaged in substantial gainful activity.  20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488.  If so, then by statute and by regulation, the child is ineligible for SSI benefits.  42 U.S.C. § 1382c(a)(3) (C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examination of whether he or she suffers from one or more medically determinable impairments that, either alone or in combination, are properly regarded as "severe," in that they cause more than a minimal functional limitation.  20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If the child is found to have a severe impairment, the Commissioner must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt.

P., App. 1.  *Id*.  Equivalence to a listing can be either medical or functional.  20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and the twelve-month durational requirement is satisfied, the claimant will be found to be disabled.  20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

 "Functional" equivalence must be examined only if it is determined that the claimant's impairment does not meet or medically equal the criteria for a listed impairment.  Analysis of functionality involves considering how a claimant functions in six main areas referred to as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8.  The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  Those domains include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established by finding an  "extreme" limitation, meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is

found in any two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

### 2.    Adult

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such  severity that he is not only unable to do his previous work but  cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hire if he applied for work

42 U.S.C. § 1382(a)(3)(B).  The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations. If the claimant has such an impairment, the
> [Commissioner] will consider him disabled with-out considering
> vocational factors such as age, education, and work experience…
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that his impairment prevents him from performing

his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012). It must be "more than a scintilla" of evidence scattered throughout the

administrative record. *Id.* However, this standard is a very deferential standard of

review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III. **FACTS**

Plaintiff was born on January 6, 1998. (T. 112). At the time of the May 2016 hearing, she was 18 years old and attending her senior year of high school. (T. 67-68). She was working toward a regents diploma, and hoped to attend a two-year college after she graduated. (T. 68-70). Plaintiff was employed at a diaper service company through a school vocational program. (T. 71-72). Her tasks included sorting and folding laundry. (*Id.*).

Plaintiff had difficulty at home with paying attention and maintaining her personal hygiene. (T. 72). She did not experience the same difficulty paying attention when she was at work. (T. 73). Plaintiff did not have a driver's license; she used the bus to get to school. (T. 76). She helped her mother with grocery shopping. (T. 75). She was responsible for some chores at home, including cleaning. (T. 84-85). Although she had friends in school, she did not socialize outside of school. (T. 77). She struggled with bullying. (T. 77, 80). It was difficult for her to interpret other people's emotions. (T. 85-86). In her free time, plaintiff enjoyed reading, writing and playing on her tablet. (T. 78-82). Plaintiff did not have any physical health issues. (T. 93). She attended weekly counseling. (T. 94).

Plaintiff's stepmother, Elizabeth Blake, also testified at the hearing. According to Ms. Blake, plaintiff did "wonderful" when "things [were] structured and routine." (T. 89). Plaintiff could follow a daily routine, attend school, and get through the evening without any difficulty. (T. 89). If something disrupted her routine, however, plaintiff's emotional state became chaotic and hysterical. (*Id.*). Ms. Blake referred to these as plaintiff's meltdowns. (T. 89-91). Plaintiff would also have a "fit" or "temper" if asked to do a new chore, or if she was overtired. (T. 92).

When plaintiff returned for her May 2019 hearing, she was 21 years old. She had graduated high school and since attempted to find employment. (T. 1314-15). She testified that her utilization of a local vocational agency and job coach was unsuccessful. (T. 1317). Plaintiff was not looking for work at the time of the hearing, because she was volunteering at the library and CNY Arts. (T. 1316). Plaintiff was

still considering whether to go to college.  (T. 1317-18).  She lived with her stepmother, but sometimes stayed with her biological mother.  (T. 1318-19).  Her free time was spent at home, watching television, reading, listening to music, and taking care of the family pets.  (T. 1319-21).  Plaintiff had friends that she communicated with on the phone, but who lived too far away to visit regularly.  (T. 1320).  She still needed counseling to address her social and emotional needs.  (T. 1326-28).  When she got frustrated, she would throw "fits."  (T. 1328).  It did not happen "a lot."  (T. 1329).

## IV.   **THE ALJ'S DECISION**

The ALJ first analyzed plaintiff's eligibility for childhood disability benefits during the applicable period prior to January 6, 2016.  After finding that plaintiff had not engaged in substantial gainful activity ("SGA") since the date her application was filed, the ALJ found that plaintiff had the following severe impairments at step two of the sequential analysis: borderline intellectual functioning; anxiety disorder; affective disorder; mood disorder; attention deficit hyperactive disorder (ADHD); emotional disturbance; developmental disorder; learning disorder in reading, writing and math; disruptive behavior disorder; and allergic rhinitis.  (T. 1274).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (T. 1275).

The ALJ continued her analysis, and found that plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of a listed impairment under the regulations.  (T. 1275-88).  Based upon her review of the

evidence, the ALJ found that plaintiff had a marked limitation in acquiring and using information; a less than marked limitation in attending and completing tasks, interacting and relating with others, caring for oneself, and health and physical well-being; and no limitation in moving about and manipulating objects.  (T. 1280-88).

The ALJ also evaluated plaintiff's hearing testimony, concluding that plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the record evidence.  (T. 1277).  Because plaintiff did not have a "marked" limitation in two or more of the functional domains, and did not have an "extreme" limitation in any one domain, the ALJ concluded that plaintiff was not disabled prior to attaining age 18.  (T. 1288).

The ALJ continued her analysis, finding that plaintiff had not developed any new impairments since she turned 18 years old.  (*Id.*).  The ALJ further concluded that plaintiff continued to have the same severe impairments since attaining age 18, and none of the impairments or combination of impairments met or equaled a listed impairment.  (*Id.*).

Next, the ALJ determined that, since attaining age 18, the plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant should avoid concentrated exposure to respiratory irritants such as dust, odors, fumes, gases and extreme hot and cold temperatures. The claimant should work in a job with word reading of grade 6 or below, sentence comprehension of grade 3.5 or below, spelling of grade 4.7 or below, math computation of grade 4.0 or below and a reading composite of grade 4.3 or below.  The

> claimant should work at simple routine and repetitive tasks.
> The claimant should work in a low stress job defined as
> occasional decision-making, occasional judgment required
> and occasional changes in the work setting.  The claimant
> should have occasional contact with coworkers, supervisors
> and the public.

(T. 1291).  In making this determination, the ALJ conducted a detailed analysis of the

medical evidence of record and considered plaintiff's stated symptoms and activities.

(T. 1288-93).

The ALJ found that plaintiff had no past relevant work.  (T. 1293).  However, at

step five, using the Medical Vocational Guidelines as a "framework," and the VE's

testimony, the ALJ found that plaintiff was "capable of making a successful adjustment

to other work that exists in significant numbers in the national economy."  (T. 1294-

95).  Thus, the ALJ found that plaintiff was not disabled from January 5, 2016, the day

plaintiff attained age 18, through the date of her decision.  (T. 1295).

## V.   <u>ISSUES IN CONTENTION</u>

Plaintiff raises the following arguments in support of her position that the ALJ's

decision is not supported by substantial evidence:

1.   The ALJ failed to properly weigh the opinion evidence relative to
plaintiff's childhood impairments, including that of plaintiff's special
education teacher.  (Plaintiff's Brief ("Pl.'s Br.") at 13-21) (Dkt. No. 11).

2.   The ALJ failed to properly incorporate plaintiff's mental limitations into
her RFC determination.  (Pl.'s Br. at 21-23).

Defendant argues that the ALJ properly considered the evidence of record, and

the Commissioner's decision is supported by substantial evidence. (Defendant's Brief

("Def.'s Br.") at 10-25) (Dkt. No. 14).  For the following reasons, this court agrees with

the defendant and will affirm the Commissioner's decision.

DISCUSSION

## VI.   CHILDHOOD - WEIGHT OF THE EVIDENCE

### A.   Legal Standards

The ALJ must "evaluate every medical opinion [he] receives, regardless of its source." *Bryant ex rel M.K.* v. *Comm'r of Soc. Sec.*, No. 17-CV-6662, 2019 WL 403398, at *2 (W.D.N.Y. Jan 31, 2019) (citing *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998) (citation omitted)); see also 20 C.F.R. § 416.927(c). "Unless a treating source's opinion is given controlling weight, the ALJ considers several factors to decide how much weight to give to a medical opinion," including (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. *Id.* § 416.927(c)(1)-(6).  The ALJ does not have to apply every factor, but he must sufficiently explain his reasoning behind the weight given to the medical opinions.  *Id.*

The Commissioner will consider evidence from "other sources" to show the "severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Crouch ex rel. K.C. v. Astrue,* No. 5:11-820 (LEK/ESH), 2012 WL 6948676, at *3 (N.D.N.Y. Dec. 31, 2012) (citing 20 C.F.R. §§ 404.1513(e), 416.913(e)). Nurse practitioners, teachers, and social workers are considered "other sources."  Opinions

from "other sources" can be "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06–03p, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *3 (SSA Aug. 9, 2006). While their opinions cannot "establish the existence of a medically determinable impairment," they may be used as a means of providing insight into a child's degree of impairment and functional ability. *Id*. at *2 (citing 20 C.F.R. § 416.913(d)).

### B.    Application

Plaintiff argues that the ALJ failed to adequately support the "partial weight" afforded to the October 11, 2013 opinion prepared by plaintiff's special education teacher.[4]  In particular, plaintiff challenges as inadequate the ALJ's explanation for giving the opinion partial weight "to the extent that his findings are consistent with the totality of the record."  (T. 1280).  Plaintiff further contends that a proper evaluation of the special education teacher's opinion, in conjunction with the other evidence of record, would have compelled the ALJ to conclude that plaintiff had a marked limitation in the following functional domains: attending and completing tasks, interacting and relating with others, and caring for yourself.  The Commissioner contends that the ALJ provided a sufficient analysis of the opinion evidence as it

---

[4]The signature on the teacher questionnaire is illegible, however the opinion states that it was prepared by plaintiff's special education teacher as of September 26, 2013.  (T. 369).  Both parties refer to plaintiff's special education teacher at that time as Ms. Marshall; however, plaintiff's records identify Brian Heffron as plaintiff's special education teacher, and Katherine Marshall as plaintiff's regular education teacher.  (T. 534). In any event, due to the uncertainty of who authored the opinion, the court will refer to its author as plaintiff's special education teacher, or the author.

related to each functional domain.

On October 11, 2013, plaintiff's special education teacher filled out a teacher questionnaire relative to plaintiff's functional abilities.  (T. 362-69).  Although the opinion was rendered fairly early in plaintiff's sophomore year of high school, the author indicated that he had been working with plaintiff for approximately two years.  (T. 362).  With respect to attending and completing tasks, plaintiff's special education teacher opined that she had an obvious problem in the majority of functional activities, but had a serious problem with carrying out single-step and multi-step instructions.  (T. 364).  He indicated that plaintiff required a "structured classroom and additional resources."  (*Id.*).

With respect to interacting and relating with others, plaintiff's special education teacher opined that plaintiff had an obvious problem with following rules; respecting/obeying adults in authority; using language appropriate to the situation and listener; and introducing and maintaining relevant and appropriate topics of conversation.  (T. 365).  He found that plaintiff had a serious problem with seeking attention appropriately; expressing anger appropriately; asking permission appropriately; taking turns in a conversation; interpreting meaning of facial expression, body language, hints and sarcasm; and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation.  (*Id.*).  Last, he found plaintiff had a very serious problem with making and keeping friends.  (*Id.*)  The opinion acknowledged plaintiff's behavior intervention plan, implemented to control emotional outbursts.  (*Id.*).

14

Last, with respect to caring for herself, plaintiff's special education teacher found that she had a serious problem in the majority of relevant functional activities. (T. 367). He concluded that plaintiff had a very serious problem responding appropriately to changes in her mood (e.g. calming herself), and with using appropriate coping skills to meet the daily demands of the school environment. (*Id.*). The opinion further indicates that plaintiff "is often unable to make it through class without needing to step out of [the] room or returning to the 12:1:1 room." (*Id.*).

The ALJ explicitly considered the teacher questionnaire in her decision, in conjunction with the various Individualized Education Plans (IEPs) prepared between plaintiff's freshman and senior year of high school. (T. 1280). After discussing the relevant portions of the special education teacher's opinion, the ALJ considered the author's opportunity to observe plaintiff in the classroom and compare her performance to other students. (*Id.*). Based on these factors, the ALJ gave partial weight to the opinion, "to the extent that [plaintiff's special education teacher's] findings [were] consistent with the totality of the record." (*Id.*).

Plaintiff presently complains that the ALJ's treatment of the special education teacher's opinion was deficient because her decision does not identify which portions of the opinion were discounted by the ALJ, which were accepted, and why. Plaintiff's argument is unfounded. A complete reading of the ALJ's decision reveals that the ALJ in fact discussed the specific findings of plaintiff's special education teacher in further detail throughout her analysis of the six functional domains. (T. 1280-88). In addition to identifying the portions of the opinion that she found supported by other evidence in

the record, the ALJ explicitly discussed the portions that she rejected, citing contradicting evidence in support of her alternative findings.  As set forth in more detail below, the ALJ's consideration of plaintiff's special education teacher's opinion was legally sufficient, and her assessment of plaintiff's functioning in the contested domains was supported by substantial evidence.

### 1.     Attending and Completing Tasks

The ALJ concluded that plaintiff had less than a marked limitation in attending and completing tasks.  (T. 1282).  This domain considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which she performs activities and the ease of changing activities.  *See* 20 C.F.R. 416.926a(h).

First the opinion of plaintiff's special education teacher does not outright contradict the ALJ's finding of a less than marked limitation in this domain.  Plaintiff's special education teacher found that plaintiff had an obvious problem in the majority of activities in this domain, as opposed to a serious problem or a very serious problem.  In the absence of any support for plaintiff's contention that her primarily "obvious" problems equated to a marked limitation in this domain, this court declines to adopt such a bright line rule.  *See Singleton v. Comm'r of Soc. Sec.*, No. 5:15-CV-1523 (ATB), 2016 WL 6156000, at * (N.D.N.Y. Oct. 20, 2016) ("Plaintiff's assumption that several 'obvious problems' and one 'serious' problem should be the equivalent of a 'marked' limitation is not supported by the evidence in the record[.]"); *see also Golibersuch o/b/o N.R.G. v. Comm'r of Soc. Sec.*, No. 18-CV-976, 2020 WL 409991, at

16

\*5 (W.D.N.Y. Jan. 24, 2020) ("'Obvious' problems in a domain do not necessarily equate to a marked limitation in that domain.") (citing inter alia *Fawcett v. Astrue*, No. 11-CV-253, 2012 WL 1744840, at \*5 (D.N.H. May 16, 2012) ("[The special education coordinator's] report that claimant had 'an obvious problem' in eight of ten areas relating to the acquisition and use of information is not necessarily inconsistent with the ALJ's finding that claimant's limitation in that domain is not marked.")).

Here, the ALJ properly relied on other objective evidence which supported her determination that a less than marked limitation was warranted.  On November 8, 2013, plaintiff underwent a psychiatric evaluation with Christina Caldwell, Psy.D.  (T. 733-36).  During the examination, Dr. Caldwell found plaintiff's attention and concentration to be mildly impaired.  (T. 734).  Based on her examination findings, Dr. Caldwell opined that plaintiff had no evidence of limitations in the ability to attend to, follow and understand age appropriate directions.  (T. 735).  She further opined that plaintiff evidenced only mild to moderate limitations in her ability to complete age-appropriate tasks.  (*Id.*). According to the regulations, a "marked" limitation is defined as a limitation that is "more than moderate" but "less than extreme."  20 C.F.R. 416.926a(e)(2).  Moreover, state agency consultant Cheryl Butensky similarly found that plaintiff's limitations in this domain were less than marked, citing the findings of plaintiff's special education teacher and Dr. Caldwell.  (T. 117).

The opinion evidence relied on by the ALJ, including that of Dr. Caldwell, Dr. Butensky, and plaintiff's special education teacher, was consistent with and provided sufficient support for the ALJ's conclusion that plaintiff had less than a marked

limitation in attending and completing tasks.  *See Monroe v. Comm'r of Soc. Sec.*, No. 5:15-CV-1235 (GTS/WBC), 2016 WL 7971330, at *7 (N.D.N.Y. Dec. 29, 2016), report and recommendation adopted, 2017 WL 318838 (N.D.N.Y. Jan. 23, 2017) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").  Thus, the court finds no basis to disturb the Commissioner's findings relative to this domain.

## 2.    Interacting and Relating with Others

The ALJ found that plaintiff had a less than marked limitation in interacting and relating with others.  (T. 1284).  This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.  *See* 20 C.F.R. 416.926a(i).

Plaintiff argues that, had the opinion of plaintiff's special education teacher been afforded more weight, the ALJ would have been compelled to find that plaintiff had at least a marked limitation in this domain.  The court is not so persuaded.  In the first instance, plaintiff provides no authority supporting her argument that the special education teacher's assessment of mostly "serious" and "very serious" problems equates to a "marked" or "extreme" limitation; in fact such an interpretation has been rejected by other courts.  *See White o/b/o T.R.W. v. Berryhill*, No. 17-CV-6367, 2019 WL 1367382, at *5 (W.D.N.Y. Mar. 26, 2019) (rejecting plaintiff's argument that "serious" or "very serious" problems equate to "marked" or "extreme" limitations, and

listing other cases in support of the same proposition).

Notwithstanding, even if the special education teacher's opinion contradicted a finding of less than marked limitations, the ALJ specifically explained her treatment of his opinion in this domain, as well as her rejection of any marked limitations to the extent they were implied in the teacher questionnaire.  The ALJ acknowledged the special education teacher's more restrictive limitations, but cited plaintiff's IEP records as the context within which his opinion should be viewed.  (T. 1284).  The special education teacher's opinion was prepared at the beginning of plaintiff's sophomore year, not long after the onset date for the alleged disability period.  Nevertheless, plaintiff's various IEPs prepared from that time until she turned 18 years old display an arguable trend of improvement in her ability to interact and relate with others.  For example, plaintiff's September 2013 IEP indicated that she was able to form positive relationships with her peers; however, she needed support with respect to her anger and impulsive behavior.  (T. 339).  Plaintiff's 2014 and 2015 IEPs further reflect that she made an effort to be nice to others, worked hard to maintain her relationship with her best friend, was usually polite and respectful to adults, exhibited kindness to peers, assisted staff when she was able, and enjoyed participating in group activities.  (T. 425-26, 555, 563-64).  It is clear that the ALJ considered the totality of plaintiff's education records in assessing plaintiff's special education teacher's opinion.  It was the ALJ's prerogative to discount his restrictive opinion, to the extent that was contradicted by other evidence of record.  *See Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 328 (S.D.N.Y.2010) (stating "the ALJ was entitled to weigh the conflicting opinion

evidence and credit that which he found most persuasive.")

Moreover, the ALJ's opinion that plaintiff had less than marked limitations in interacting and relating with others is adequately supported by other opinion evidence of record.  Upon examination, Dr. Caldwell noted that plaintiff's demeanor and responsiveness to questions was cooperative.  (T. 734).  She found plaintiff's manner of relating, social skills, and overall presentation was fair to poor.  (*Id.*).  Plaintiff's expressive and receptive language was adequate.  (*Id.*).  Based on her findings, Dr. Caldwell opined that plaintiff evidenced moderate limitations in her ability to adequately maintain appropriate social behavior, interact adequately with peers and adults, and respond appropriately to changes in her environment.  (T. 735).  After reviewing the evidence of record, including Dr. Caldwell's opinion, Dr. Butensky concluded that plaintiff had less than a marked limitation in this domain.  Dr. Butensky noted plaintiff's problems interacting with others, but also indicated that she was not taking any psychiatric medication, and plaintiff was "coping much better this year."[5] (T. 117).

Dr. Caldwell and Dr. Butensky's opinions are not inconsistent with plaintiff's treatment and education records.  According to a psychological report prepared on September 24, 2013 by plaintiff's school psychologist Renata Cary, she had an opportunity to observe plaintiff in the classroom and in an individual setting.  (T. 844). On one occasion, she observed plaintiff give a short presentation to her peers. Although plaintiff struggled with organizing her thoughts at first, she was eventually

---

[5]Dr. Butensky's opinion was rendered on January 21, 2014.  (T. 117).

able to share all pertinent information and appropriately respond to questions posed to her. (*Id.*). Some of Dr. Cary's conversations with plaintiff were described as off-topic or disconnected; however, Dr. Cary also referenced that there were many discussions in which plaintiff was clear and concise in her responses. (*Id.*). Dr. Cary also noted that plaintiff reported having a best friend, and she participated in an after-school activity. (T. 846). Plaintiff's therapy records reference her interactions with various friends, as well as a boyfriend. (T. 1191). At the end of her junior year, she was identified as a "leader in a small group setting." (T. 422). Based on this evidence, it was not unreasonable for the ALJ to conclude that, during the alleged period of disability, plaintiff's social functioning had improved since last assessed by her special education teacher in 2013.

Plaintiff's argument amounts to a disagreement with the ALJ's consideration of conflicting evidence in the record. "[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support her position." *Warren v. Comm'r of Soc. Sec.*, 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, *6 (N.D.N.Y. 11/18/2016), report and recommendation adopted, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016). Rather, she must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id*. The ALJ's decision with respect to this domain demonstrates that she weighed the record evidence, including the conflicting evidence. Thus, there is no basis to overturn the ALJ's assessment of the evidence relative to interacting and

relating with others.

### 3.   Caring for Yourself

The ALJ concluded that plaintiff had less than a marked limitation in the ability to care for herself.  (T. 1286).  This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies her physical and emotional wants and needs in appropriate ways.  This includes how the child copes with stress and changes in the environment and whether the child takes care of her own health, possessions, and living area.  *See* 20 C.F.R. 416.926a(k).

Once again, the ALJ was faced with conflicting evidence regarding the extent of plaintiff's limitations in this domain.  According to her special education teacher, plaintiff was "often" unable to make it through class without needing to step out of the room.  (T. 367).  In assessing her functioning in this domain, her special education teacher concluded that plaintiff had mostly serious problems, with a very serious problem responding appropriately to changes in her own mood (e.g. calming self) and using appropriate coping skills to meet the daily demands of the school environment. (*Id.*).  While reflecting on plaintiff's past behavior (appearing to address a time period prior to the alleged onset date), school psychologist Renata Cary also  referenced plaintiff's difficulty dealing with stressors and maintaining self control in school, and identified her primary coping mechanism as fleeing from the room.  (T. 848).  Another teacher indicated that "most days [plaintiff] is able to stay in the classroom."  (T. 847).

However, at plaintiff's September 2013 reevaluation meeting relative to her IEP, she was noted to be "handling the new pressures of the year very well," and, "compared

to last year, coping with the pressures independently." (T. 336).  She still needed to work on compulsive behavior.  (T. 339).  By the end of her junior year, her education records indicate that plaintiff was "utilizing her supports and is being successful."  (T. 422).  Noted strengths included a self-awareness that she could become overwhelmed easily, and gets nervous and uncertain of herself at times; she was described as exhibiting a "new confidence and self assuredness."  (T. 426).  It was noted that plaintiff's "impulsive behaviors, emotional outbursts and tantrums" continued to affect her.  (*Id.*).  Nevertheless, plaintiff displayed the ability to ask for help when "her stress level exceeds her ability to cope with social and emotional stressors."  (*Id.*).  She was described as a self-advocate.  (*Id.*).

In addition to plaintiff's education records, the ALJ considered the objective medical evidence as it related to plaintiff's ability to care for herself.  Based on her consultative examination, Dr. Caldwell opined that plaintiff had moderate limitations in her ability to respond appropriately to changes in her environment.  (T. 735).  The record also includes a child intelligence evaluation performed by Rebecca Fisher, Psy.D., on January 14, 2014.  (T. 739).  Behaviorally, Dr. Fisher observed that plaintiff did not evidence significant emotional distress during the evaluation.  (T. 740).  Dr. Fisher concluded that plaintiff did not appear to have any limitation in responding appropriately to changes in her environment, be aware of danger, and take needed precautions.  (T. 741-42).  Although Dr. Fisher's opinion seems shortsighted in light of the totality of the evidence, plaintiff's treatment records do not contradict Dr.

Caldwell's finding of no-more-than moderate limitations in this domain.[6]

In this case, the ALJ explicitly acknowledged the conflicts in the record with respect to this domain, including those presented by the opinion of plaintiff's special education teacher in September 2013. "[I]t was incumbent upon the ALJ to resolve any discrepancies, and because [her] determination is supported by substantial evidence in the record, the court is not now positioned to disturb that determination and reassess the conflicting evidence. *See Lusher ex rel. Justice v. Comm'r of Soc. Sec.*, No. 7:05-CV-1110 (DNH), 2008 WL 2242652, at *10 (N.D.N.Y. May 29, 2008) (citing Rodriguez v. Apfel, No. 98-CV-3617, 1998 WL 903608, at *7 (E.D.N.Y. Dec. 14, 1998)).

---

[6]12/1/14 - "It appears that [plaintiff's] learning disability and some anxious tendencies can become a barrier at times, but overall she appears to be doing very well." (T. 1195); 12/8/14 - "[Plaintiff] appears to handle herself the best way she can in what seems to be a very chaotic [home] life." (T. 1193); 1/6/15 - "[Plaintiff] added wanting to work on her attitude as well . . . she reported sometimes it can be bad." (T. 1187); 3/19/15 - "[Plaintiff] heard that her father was having a baby and was very upset by this. Today [plaintiff] reported that she did not want to talk about it as she is talked out[,] but did write a letter to her father and he read it and it went well." (T. 1173); 4/20/15 - "[Plaintiff] did a great job deciding on her own what felt right to do." (T. 1163); 5/18/15 - "Overall [plaintiff] did a great job today in expressing her emotions and really turned he attitude around quickly with being tardy." (T. 1147); 8/4/15 - "[Plaintiff] then reported being ready to start back to school and start looking into her future college plans." (T. 1127); 8/18/15 - "[Plaintiff] stated that she wants to try and open up more this school year [in therapy] and realizes that when she doesn't talk it doesn't help her." (T. 1125); 9/1/15 - "This writer also talked to [plaintiff] about better managing her stress at home and we talked about what is in her control and out of her control. [Plaintiff] was able to process this information very well and identify the things she cannot control and can control and ways to cope with the stress and people in the home." (T. 1121); 10/7/15 - "[Plaintiff's teacher reported] a meltdown she had today over an English assignment[.] . . . plaintiff was asked to enter the de-escalation room which she did and was easily able to calm herself down. . . [plaintiff] understands that she cannot go back to the way she acted in the 9th grade, especially because she has the right coping skills to handle her frustrations appropriately." (T. 1109.)

## VII.   ADULT - RFC

### A.   Legal Standards

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*,

25

728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### B.   Application

Plaintiff's second argument contends that the stress component of the ALJ's mental RFC determination is not supported by substantial evidence in the record, particularly the opinion of Lewis J. Malgieri, Ph.D.  (Pl.'s Br. at 21-23).  For the following reasons, the court disagrees and finds that the ALJ's treatment of the opinion evidence of record was legally sufficient, and her mental RFC determination was supported by substantial evidence.

In rendering her RFC determination, which assessed plaintiff's limitations as primarily nonexertional, the ALJ explicitly examined all of the opinion evidence of record.  This included two consultative examinations performed after plaintiff turned 18 years old.  On March 8, 2016, Sarah Long, Ph.D. performed a psychiatric evaluation of plaintiff.  (T. 822-25).  Based on her examination, Dr. Long opined that plaintiff did not appear to have any limitations following and understanding simple directions and performing simple tasks.  (T. 824).  She found that plaintiff was able to maintain attention and concentration, and appeared to be able to maintain a regular schedule.

(*Id.*).  Dr. Long further opined that plaintiff could learn new tasks, perform some complex tasks, and make appropriate decisions within context.  (*Id.*).  She concluded that plaintiff presented as "capable of adequate stress management." (*Id.*).  In a separate medical source statement, Dr. Long opined that plaintiff had no more than moderate limitations in her ability to understand, remember and carry out instructions; and interact appropriately with supervision, co-workers, and the public.  (T. 826-27).  Dr. Long opined that plaintiff had moderate limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting.  (T. 827).

Plaintiff underwent another consultative psychiatric examination on June 20, 2019 with Jeanne A. Shapiro, Ph.D.  (T. 1659-63).  Based on her examination, Dr. Shapiro concluded that plaintiff had mild limitations understanding, remembering, or applying simple directions and instructions; and maintaining personal hygiene and wearing appropriate attire.  (T. 1662).  Dr. Shapiro further found that plaintiff had mild to moderate limitations in using reasoning and judgment to make work-related decisions; interacting appropriately with supervisors, coworkers, and the public; sustaining concentration and performing a task at a consistent pace; and regulating emotions, controlling behavior, and maintaining well-being.  (*Id.*).  Moderate limitations were assessed with sustaining an ordinary routine and regular attendance at work; as well as with being aware of normal hazards and taking appropriate precautions.  (*Id.*).  Plaintiff exhibited moderate to marked limitations understanding, remembering, or applying complex directions and instructions.  (*Id.*)

The ALJ also assessed several opinions prepared in conjunction with the support plaintiff received through vocational agency ACCES-VR.  (T. 1577).  First, the ALJ considered Dr. Malgieri's October 14, 2016 neuropsychological screening.[7]  (T. 1292, 1577-1582).  Dr. Malgieri observed that plaintiff initially presented as motivated; however, she became emotional and "almost explosive" when the testing became difficult.  (T. 1578).  He identified her social skills as moderate to poor, and acknowledged her need for frequent breaks because of the difficulties in testing.  (*Id.*). Dr. Malgieri further assessed plaintiff's cognitive limitations, including those in reading, comprehension, spelling, and math.  (T. 1579).[8]  He noted plaintiff's "excessive difficulties" in mood control, difficulty understanding and responding to others, and "persistent deficits" in social interactions, social emotional reciprocity, nonverbal communication, and difficulties with the rigidity of maintaining and not changing her routine.  (T. 1581).  Dr. Malgieri was "impressed" with plaintiff's ability to persevere, to try hard and develop as much problem solving and focus as she could. (*Id.*).  He recognized her ability to achieve a high school diploma, despite her limitations.  (*Id*).  Dr. Malgieri noted that, under the right circumstances, it was "quite possible" that plaintiff could work at "some part time position."  (*Id.*).

---

[7]The record inexplicably contains two drafts of Dr. Malgieri's assessment - one dated October 12, 2016 and the other dated October 14, 2016.  (T. 1577, 1629).  The ALJ cites to the latter, which the court assumes is the final draft.

[8]Dr. Malgieri noted that plaintiff's overall intellectual functioning appeared to be higher than indicated in his examination.  He attributed this anomaly to either a decrease in plaintiff's functioning secondary to the progression of autism, or her difficulties with anxiety and attention throughout the examination, which may have produced some partial decrements in the results. (T. 1582).

Plaintiff had another psychological assessment performed in conjunction with her vocational rehabilitation on December 12, 2017.  (T. 1584-88).  The assessment was conducted by both Melissa Morton, a "psychological evaluator,"[9] and Joseph Himmelsbach, Ph.D., licensed psychologist.  (*Id.*).  The results of Ms. Morton and Dr. Himmelsbach's assessment indicated that plaintiff's general adaptive skills fell into the extremely low range.  (T. 1588).

The ALJ explicitly considered each of above opinions in her decision, affording them each "partial weight to the extent that [their] findings are supported by the totality of the record."  (T. 1292-93).  This treatment was not inherently improper.  *See Larson v. Comm'r of Soc. Sec.,* No. 19-CV-0116, 2020 WL 5018331, at *10 (W.D.N.Y. Aug. 25, 2020) ("Simply because the ALJ did not assign controlling weight to any opinion does not mean that she "rejected" the medical opinion evidence in the record.") (listing cases).  Moreover, and despite plaintiff's contention to the contrary, the ALJ's analysis did not end there.  The ALJ also pointed to portions of the opinions that she accepted or rejected, providing an explanation for her treatment.

Although plaintiff disputes the ALJ's mental RFC assessment, arguing that the objective evidence supports greater stress limitations than those accounted for, the ALJ provided sufficient reasoning for her conclusions, and her explanation is supported by the court's review of the evidence she cites in support.  Admittedly, courts in this circuit have recognized the importance of an individualized inquiry in accounting for stress.  "Because stress is highly individualized, mentally impaired individuals may

---

[9]The assessment did not identify what, if any, credentials Ms. Morton held in the field of mental health.

have difficulty meeting the requirements of even so-called low stress jobs, and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work." *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019) (citation omitted).

Here, the ALJ explicitly included stress-based limitations into the RFC by limiting plaintiff to work in a low-stress environment, meaning work requiring no more than occasional decision-making, judgment, changes in the work setting, and social interactions. (T. 1291).  In addition, the ALJ limited plaintiff to simple, routine and repetitive tasks.  (*Id.*).  Thus, despite plaintiff's contentions, the ALJ satisfied her duty to make specific findings surrounding plaintiff's ability to deal with stress.  *See Alexandrea R. R. v. Berryhill*, No. 18-CV-121 (DNH), 2019 WL 2269854, at *7 (N.D.N.Y. May 28, 2019) (holding that ALJ discharged her duty to consider stress-related limitations by "assessing a number of limitations in [the claimant's] ability to perform work-related mental tasks, and by including a number of specific restrictions in recognition of [the claimant's] ability to handle work-related stressors").

Moreover, the stress-related restrictions included into the ALJ's RFC determination are consistent with the objective evidence of record, to the extent they incorporate the no-more-than moderate limitations contained in Dr. Long's and Dr. Shapiro's opinions.  *See Martinez v. Commissioner*, No. 3:16-CV-0908 (WBC), 2017 WL 2633532, at *7 (N.D.N.Y. June 15, 2017) (collecting cases, and noting that the "Second Circuit has held that moderate limitations in work related functioning

[including handling stress, making appropriate decisions, relating adequately with others, and dealing with stress] does not significantly limit, and thus prevent, a plaintiff from performing unskilled work"); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) (moderate limitations in ability to make appropriate decisions, relate adequately with others, and cope with stress are sufficiently accommodated by an RFC limited to routine tasks in a low stress, low contact environment).

Last, and contrary to plaintiff's position, the ALJ's disability determination is not necessarily inconsistent with the findings of Dr. Malgieri.  The ALJ acknowledged Dr. Malgieri's cognitive testing results, but also noted that plaintiff's algebra regents exam score was consistent with an ability to perform simple math.  (T. 1292).  Nevertheless, "viewing the evidence in the light most favorable to the plaintiff," the ALJ included the cognitive limitations identified by Dr. Malgieri in her RFC determination.  Moreover, Dr. Malgieri's opinion that plaintiff suffered from behavior, anxiety, and learning disorders is consistent with the ALJ's findings at step two of the sequential analysis.[10] (T. 1274, 1581).  Although Dr. Malgieri's opinion did not directly speak to plaintiff's functional ability to work, the ALJ acknowledged his recommendations for vocational training and education in light of plaintiff's impairments, and concluded that the needs identified by Dr. Malgieri could be supported in a work environment limited to low stress.  Plaintiff fails to show how the ALJ erred in her interpretation of Dr. Malgieri's

---

[10]Dr. Malgieri also diagnosed plaintiff with "Autistic Spectrum Disorder Moderate with Atypical Presentation."  (T. 1581).  This is one of, if not the first diagnosis of autism that plaintiff received, and the ALJ did not include autism as a severe impairment at step two.  Plaintiff does not contest the ALJ's step two determination regarding severe impairments.

opinion.

The court finds that the ALJ appropriately based her RFC determination on the objective evidence, including the several opinions of record. I also find, for the reasons stated above, that the ALJ's RFC determination is otherwise supported by substantial evidence. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole"); *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (the ALJ is "not require[d] . . . [to] mention[ ] every item of testimony presented to him or . . . explain[ ] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"). Thus, remand is not warranted on this basis.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **AFFIRMED** and this case **DISMISSED**, and it is

**ORDERED**, that the Clerk enter judgment for **DEFENDANT**.


Dated:      October 1, 2020

_____
Andrew T. Baxter
U.S. Magistrate Judge